INHABITANTS OF YORK *vs.* JOHN C. STEWART, et als.

York.    Opinion July 1, 1913.

*Authority.   Bond.   Breach of Bond.   Committee.   Hiring Money.   Meeting.*
*Treasurer.    Trust Funds.   Vote.*

1.  A town treasurer by virtue of his office has no authority to borrow money
    upon the credit of the town for any purpose, unless specially authorized by
    vote of the town.
2.  As no provision is made in the two bequests in the wills of Olive Clark
    and Mary H. Emerson that the principals should be funded and only the
    income be used for the purposes named, a trust was thereby created and
    the town became the trustee, having voted to accept the funds.
3.  Under the regulations therein specified, the town could invest the fund in
    interest bearing securities and use the income for the purposes of the trust,
    or use the principal for ordinary municipal purpose, devoting a fair rate
    of interest thereon to the same trust purposes.

On report.   Judgment for defendant.

This is an action of debt on the official bond of the defendant as
treasurer of the town of York for the municipal year of 1906-7.
The plaintiffs claimed as breaches by the defendant:

First.   That he paid certain amounts on account of the construc-
tion of the bridge across York River.

Second.   That he diverted certain trust funds held by the town
amounting to $3,104.37 to the same bridge account.

At the conclusion of the evidence, by agreement of the parties
the case was reported to the Law Court for final determination upon
so much of the evidence as is legally admissible.

The case is stated in the opinion.

*James O. Bradbury, and George F. & Leroy Haley,* for plaintiff.
*Cleaves, Waterhouse & Emery,* for defendants.

SITTING:   SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, JJ.

CORNISH, J. Debt on official bond. The defendant was treasurer of the town of York for the municipal year 1906-7, and this case is an echo of the famous York bridge controversy, many phases of which have reached the court. At a special meeting held on October 13, 1906, the town voted to build a bridge across the York River, between the towns of York and Kittery as already laid out by the County Commissioners, and chose a bridge committee of seven, consisting of the three members of the board of selectmen and four other persons, but neither made an appropriation therefor nor provided for the hiring of money with which to meet the cost.

The selectmen declining to act, the other four members, constituting a majority, proceeded to perform their duty, engaged an engineer, obtained plans and specifications, advertised for bids and on December 5, 1906, entered into a contract with one Edward B. Blaisdell for the construction of the bridge.

The defendant, as town treasurer, hired $25,000 in the name of the town and on March 9, 1907, turned it over to the bridge committee for construction purposes. He had no legal right to do this. A town treasurer by virtue of his office has no authority to borrow money upon the credit of the town for any purpose unless specially authorized by vote of the town. *Lovejoy* v. *Foxcroft,* 91 Maine, 367. The vote of the town at the previous annual meeting on March 12, 1906, whereby the treasurer was instructed and authorized "to hire money on the credit of the town to meet pressing liabilities" did not contemplate any such authority as this. That vote had in view the ordinary town expenses for the payment of which an emergency might arise, perhaps before the taxes were collectible. It certainly cannot be held to cover a loan for building a bridge when at the same meeting an article to see if the town would vote to construct the bridge was indefinitely postponed, and authority for such building was not given until seven months thereafter.

It appears, however, that the committee to whom the defendant paid over the proceeds of the loan returned the amount to the newly elected town treasurer on April 20, 1907, upon demand of the selectmen. So that the town has received the full benefit of that loan and that item is admittedly eliminated from this case.

Two breaches are claimed by the plaintiffs: First, certain amounts paid by the defendant on account of the construction of the

bridge, upon orders signed by the majority of the committee, amounting to $3,974.21 and second, the diversion of certain trust funds held by the town amounting to $3,104.37, to the same bridge account.

The first alleged breach rests upon the theory that, the laying out of the way and bridge was void, the meeting of October 13, 1906, illegal because not properly called, the action of the majority of the committee in making the contract and in all their doings also void, and that all payments under the contract were unauthorized. All these points except the last were raised in the case of *Blaisdell* v. *York,* 110 Maine, argued with the case at bar and decided against the contention of the town. The contract was there held to be legal and enforceable. It follows, therefore, that the town has received full benefit and consideration for all sums paid by the defendant as treasurer during his term of office, on that contract.

In fact in computing the amount due the plaintiff in *Blaisdell* v. *York,* supra, the town was given credit for two of these identical payments made to him by Mr. Stewart, $2,805.72 and $1,142.99, aggregating $3,947.71. Had this credit not been given, the judgment for the plaintiff in that suit would have been increased by that amount together with interest thereon for a period of six years. Certainly the town has lost nothing but rather has gained by having these payments made by the defendant. The other two items aggregating $25.50 and falling under the same head, were paid by the defendant to the engineer who had been employed by the majority of the committee and was in charge of the work. The town was liable therefor and the defendant was justified in making the payments.

Upon this first breach there is clearly no breach of defendant's bond. The decision in *Blaisdell* v. *York* practically settles this.

The second alleged breach is that the defendant had illegally used trust funds to pay an ordinary town debt, even assuming that the bridge debt was legal.

It appears that in October, 1906, the town received under the will of Olive Clark the sum of $2,504.37 "to be used for the support of a free high school to be kept in said town of York, but in case such free high school shall cease to be maintained, or be aban-

doned, then and in that case . . . the same or such part thereof as may remain unexpended to the New Home so-called in York, to be used for the benefit, care and comfort of the unfortunate and needy women who may be compelled by circumstances to remain therein."

The town also received in 1906-7 under the will of Mary H. Emerson the sum of $600, "to be used for the support of. a free high school to be kept in said town of York."

No provision is made in these bequests that the principal should be funded and only the income used for the purposes named, but we may assume that a trust was thereby created, and that the town became the trustee, having voted to accept the funds.

What then became the duty of the town? This question is answered by R. S., Ch. 4, Sec. 80 to 85. Under the regulations therein specified the town, speaking in general terms, may invest the fund in interest bearing securities and use the income for the purposes of the trust, or may use the pricipal for ordinary municipal purposes, devoting a fair rate of interest thereon to the same trust purposes. The town is absolutely responsible for the fund whatever disposition is made of it and whatever liability existed when these funds were first received, exists now, *Ayer* v. *Bangor,* 85 Maine, 511.

Apparently the town of York had not invested these funds but simply received them into its treasury, and they became a part of the general fund of the town. The defendant testifies that he had no knowledge of these trusts, but supposed that all the funds in the treasury belonged absolutely to the town. Whether this was so or not is immaterial. It is not claimed that the defendant converted any portion of these trust funds or of any other to his own use, but that he used them to pay the ordinary liabilities of the town. This did not work a breach of his bond. If he used the funds to pay legitimate town expenses the town has received the benefit and is still liable for the trust funds. It is simply a matter of bookkeeping. The defendant has accounted for every dollar that came into his hands, and has fulfilled his official duty.

*Judgment for defendant.*